DORE, Judge.
This is a suit for workmen’s compensation based on an alleged accidental injury sustained by plaintiff on October 8, 1947, while employed by Ponchatoula Lumber Company at Ponchatoula, Louisiana, in the capacity of skidder man. The suit was originally filed against four partners, allegedly doing business as Ponchatoula Lumber Company, but it was afterwards developed by the pleadings that the proper party defendant was A. M. Edwards Company, Inc., a Louisiana corporation doing business under the name of Ponchatoula Lumber Company, so that the proper party defendant is A. M. Edwards Company, Inc. The material allegations with reference to the accident are contained in Paragraph 3 of the petition, which reads as follows: “That while so engaged on that day plaintiff was operating a ton-and-a-half truck With a loader on it. The loader consisted of an A-frame with skidder drums on it on the back of the truck. It is used for the sole purpose of skidding and loading logs. The truck was running down a decline on the Bayou Barbara Highway in Livingston Parish near French Settlement about 8 A.M., October 8th, 1947. It gathered speed due to the decline and plaintiff attempted to slow it down but found the brakes ineffective. Believing the truck would not be able to make the curve at the bottom of the decline because of its gathering too much speed, and afraid it would crash into t)he trees at the end of the curve, plaintiff jumped out c>i the truck. The guy-line from the skidder frame caught his shoulder, spun him around and *351 threw him beneath the truck on his hack. His back hit the ground with great force and the rear wheel of the truck ran over' his feet. A fellow employee picked him up, put him in the woods foreman’s car, and brought him to Dr. Lipscomb who treated him. Afterwards he was treated by Charity Hospital in New Orleans.”
As a result of the injuries sustained in the said accident, the plaintiff alleges that he has been permanently and totally disabled, and he claims compensation in the amount of $10,000, being 400 weeks at $25 per week (65% of his weekly wage of $33), plus $58.18 expended for medical expense.
The defendant admits that an accident occurred in that on or about October 8, 1947, the plaintiff, while in the course of his employment, jumped off the ton-and-a-half truck which 'he could not control, and that the said truck ran over his feet causing bruises and abrasions thereto. The defendant contends, however, that the injuries -sustained by plaintiff were of a minor character and not compensable, and that as a result thereof, the plaintiff stayed away from work for only eight days and resumed his usual labors on October 20, 1947, and -continued working until December 5, 1947, at which time he voluntarily terminated his employment; that he terminated his employment because of a disagreement over a change in the wage scale and worked for sometime for other employers before the institution of this suit. Defendant especially denies that at the time of the institution of this suit, and at the present time, that the plaintiff is in any way disabled by the injury which occurred on the date set out in the petition, nor is he incapacitated from doing his usual and customary work.
After trial of the case, the trial court, for oral reasons assigned, rendered judgment rejecting the demands of plaintiff •and dismissing the -suit at his costs. Plaintiff has appealed.
A review of the record shows that plaintiff relies principally on medical testimony as to his physical condition. It is admitted that he was run over by a truck while in the course of his employment on October 8, 1947, but the preponderance of the evidence is to the effect that this truck merely ran over his feet and that no great injury was sustained as a result thereof. There were no fractures or any other serious injury, but merely bruises and abrasions obviously caused by one of the truck wheels (with a tire thereon), and that he was thereupon taken to Dr. Lipscomb 'for treatment and that just eight days thereafter, he voluntarily returned to his former -employment and continued working until December 5th without making any complaint and without requesting workmen’s compensation or relief from his duties.
On October 14, 1948, he was examined by Dr. Edward H. Maurer of New Orleans, an orthopedic surgeon, who expressed the opinion that he was suffering from a ruptured intervertebral disc and suggested that he be investigated by a neuro-surgeon. This doctor’s findings were negative as to plaintiff’s feet. Plaintiff contends that his back condition was the result of the accident of October 8, 1947, but there is no showing that at the time of the accident he complained of any back injury, or that he complained of any back injury upon resuming his employment eight days after the accident.
Moreover, it may be pointed out, as a significant fact, that plaintiff failed to call Dr. Lipscomb, the doctor who examined him immediately following the accident, and who certainly could have testified as to whether or not plaintiff’s back was in any way affected by his experience. The record also contains a photostatic copy of the report of the Charity Hospital at New Orleans showing that plaintiff was in that institution for treatment during February and March, 1948, but these reports do not show any treatment which would indicate a back injury sustained in the accident of October 8, 1947, although he did give a. history of having hurt his back some six: months before his treatment, and that he suffered pain in the lower part of his back.
• The only other doctor who testified, in open court, was Dr. Glen T. Scott, Jr., the company doctor who examined plaintiff on February' 1, 1949, and who at that time, *352 without benefit of x-rays, found that plaintiff had arthritis' of the lumbar spine and sacro-illiac joints, probably of long standing. He states, “The arthritis he had involved more than just his spine and all of it could not have been produced by an injury. Those things can be aggravated.” The sum and substance of this testimony is that he failed to find any condition in plaintiff which he would connect with the accident of October 8, 1947, 'but did find an arthritic condition in the spine .which would limit by at least 30 per cent of the' normal ability of plaintiff to do his work. ■ As stated before, his examination was without benefit of x-rays.
The lay testimony in support of plaintiff’s case consists of the testimony of himself and five fellow-employees, or neighbors, mainly to the effect that prior to his accident' he was able to do hard laborious work, such as' he was doing for the defendant in operating a skidder truck, and also in operating a blacksmith shop, filing saws, and doing farm work, but that since the accident and since leaving the employment of the defendant, he has been unable to do any work except very light- work, such as filing saws, while the actual lifting of the saws was done by others. Plaintiff also testifies that while he did return to his former job on June 14th, and remained thereon until December 5, 1947, that he actually did very little work and he gives as his reasons for leaving that job, the fact that he was. unable to continue due to his painful back, which he attributes to the accident. His fellow-employees and neighbors corroborate plaintiff to a slight, extent by stating that on various occasions when they saw plaintiff, he was unemployed presumably for the reason that he-could not- work due to his condition.
On the other hand, the defendants produced the testimony of fellow-employees of plaintiffs, including the testimony of Byard Edwards, his foreman, and manager of the lumber yard, who testified that he investigated the accidental injury of plaintiff and that, plaintiff .was under the care of Dr. Lipscomb from the' time -of the accident, October 8th, to October 20th, - (should be October 14th), when.he returned to Work; that he conversed with the plaintiff, as follows: “I asked him how his foot was and he said it was all right, and I cautioned him; I said, ‘Now if it isn’t all right I don’t want you to come back to work’. He said it was perfectly all right, and he was able to work. I found out that the doctor had dismissed him and the first thing I knew he was back at work.” He further testifies that plaintiff never at any time made any complaint with reference to back injuries and that no demand for workmen’s compensation was ever made until a letter was received from his attorneys.
At this point, it may be noted that the time sheet of plaintiff was introduced in evidence, marked D-2, and this shows that the last week he worked for the defendant he turned in his full time of SO. hours, that is, 10 hours per day for 5 days. It is his -contention that he left his job because of his disabled condition, but the fact that he was able to give full time for his last week, combined with the fact that at the same time of his resignation, his son-in-law and fellow-employee, J. V. Effler, also resigned, shows that his resignation was due to a change in the wage scale and not to any disability. The preponderance of the evidence was that he was able to. do his work at that time.
As to his condition a year later as shown by Dr. Maurer’s examination, we cannot presume that that condition was caused by the accident of October 8, 1947, and for that matter, even his condition a few' months after his resignation, as shown by his treatment at the 'Charity Hospital, has not been connected with the accident. It appears from the medical evidence that plaintiff possibly has an arthritic condition, or a ruptured intervertebral disc, found a considerable time after the accident, but it cannot be said that he has proved that such condition as he may have was a result of the accident. We therefore feel that the trial judge was correct in rejecting his demands.
For these assigned reasons, the judgment appealed from is affirmed.